Robert Lee LAW, Plaintiff,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE et al., Defendants.

Bud LAW, Plaintiff,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE et al., Defendants.

Civ. A. Nos. 1486, 1487.

United States District Court,
N. D. Georgia,
Gainesville Division.

Oct. 30, 1973.

William F. Welch, Atlanta, Ga., James H. Morawetz, John L. Cromartie, Jr., David F. Walbert, Bettye H. Kehrer, Atlanta, Ga., for plaintiffs.

William D. Mallard, Jr., Asst. U. S. Atty., John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., for defendants.

SIDNEY O. SMITH, Jr., Chief Judge.

These are companion suits attacking the attempted collection of debts and foreclosure of security created by loans made through the Farmers Home Administration in 1967 for an ill-fated swine raising program. In each instance, the underlying debt is challenged on various grounds. Presently before the court, however, is the serious problem occasioned by the defendants' efforts to foreclose against plaintiffs' real estate under a contractual power of sale in conformity with Georgia Code Section 67–1506. Insofar as that question is concerned, the only distinction between the two cases is that one plaintiff (Number 1486) seeks to enjoin the threatened contractual foreclosure under advertisement; while the other (Number 1487) seeks to set aside the sale under foreclosure on the first Tuesday of August, 1972, by the defendant public officials. As the statute itself is claimed to be unconstitutional, a temporary restraining order issued and a three-judge court was impaneled. However, it was determined under the narrow construction required that a three-judge court was not warranted because of the absence of action by a state officer and the panel was dissolved. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); Mitchell v. Donovan, 398 U.S. 427, 90 S.Ct. 1763, 26 L. Ed.2d 378 (1970); Giordano v. Stubbs, 335 F.Supp. 107 (N.D.Ga.1971). Prior thereto by agreement of the parties the temporary restraining order continued in force for the development of the jurisdictional and constitutional issues.

## JURISDICTION

While the facts of this case do not present the difficult threshold question of the need for state action in a due process claim under the 14th Amendment,[1] the presence of federal officials as defendants under the Fifth Amendment raises other jurisdictional considerations.

Defendants' argument on this issue is that the doctrine of sovereign immunity bars the action unless the government

---

[1]. In Pease v. Havelock National Bank, 351 F.Supp. 118 (D.Neb.1972), the court reasoned that before there could be a violation of due process there had to be state action; because the parties were an individual and a bank, no state action was involved and so due process standards did not apply. Accord McCormick v. First Nat'l Bank of Miami, 322 F.Supp. 604 (S.D.Fla.1971); Greene v. First Nat'l Exchange Bank of Virginia, 348 F.Supp. 672 (W.D.Va.1972); Oller v. Bank of America, 342 F.Supp. 21 (N.D.Cal.1972); Kirksey v. Theilig, 351 F.Supp. 727 (D.Col. 1972). But compare Hall v. Garson, 430 F. 2d 430 (5th Cir. 1972). See generally Burke and Reber, State Action, Congressional Power and Creditors Rights: An Essay on the Fourteenth Amendment, 46 S.Cal.L. Rev. 1003, 1096–1109 (1973).

has consented, which it has not done according to defendants. Plaintiff argues that the government has waived its immunity in quiet title actions and also that the Administrative Procedure Act (hereinafter APA) allows maintenance of the action.

1. Plaintiff argues that his quiet title claims fits under 28 U.S.C. § 2409a and its jurisdictional counterpart, 28 U.S.C. § 1346(f). This statute is relatively new (Oct. 25, 1972), and there appear to be no reported cases in which it has been construed. The legislative history of the statute seems to suggest that the present case falls within the scope of § 2409a. Furthermore, plaintiff points out that in the context of 28 U.S.C. § 2410 (statute permits United States to be joined as a defendant in suit to quiet title to property to which the United States claims a mortgage or other lien) a court has said the words "quiet title" were not used in the limited sense. United States v. Coson, 286 F.2d 453, 457 (9th Cir. 1961).

■ Plaintiff's arguments are persuasive. The present action appears to fit easily within the scope of § 2409a. Plaintiff claims the land is still his because the foreclosure was done in an unconstitutional manner and so was void. Accordingly, he wants the government's deed removed from the record. On the other hand, the government claims that its title is good. If a boundary dispute is covered by § 2409a, it seems to follow that Congress also intended to include a dispute such as exists in this case. Consequently, jurisdiction exists to entertain the quiet title claim against the government proper. As the Farmers Home Administration is the grantor in the deed sought to be set aside, this ruling necessarily includes it. However, the Department of Agriculture is dismissed as a party defendant.

2. (a) Secondly, plaintiff asserts that sovereign immunity does not bar his action because of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. The APA has been interpreted as providing "a clear waiver of sovereign immunity in actions to which it applies." Estrada v. Ahrens, 296 F.2d 690, 698 (5th Cir. 1961).[2] Also see Scanwell Laboratories, Inc. v. Shaffer, 137 U.S. App. D.C. 371, 424 F.2d 859, 873 (1970).

5 U.S.C. § 702 provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review thereof."

But 5 U.S.C. § 701(a)(2) states that the APA applies except to the extent that "agency action is committed to agency discretion by law." Then § 706(2)(A) says that a reviewing court shall set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." According to Professor Davis the net effect is that,

"Within the meaning of § 701, some such discretionary power is so far 'committed' to agency discretion as to be unreviewable, and some such discretionary power is not so far 'committed.'" Davis, Administrative Law Treatise, 1970 Supp., § 28.16, p. 965.

It is obvious that the actions of the officials in the present case involved the exercise of some discretion. The question becomes whether or not the exercise is reviewable, or in terms of *Estrada* whether this is a case to which the APA applies.

In Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the plaintiffs, whose business was selling data processing services to businesses, sought judicial review of a ruling by the Comptroller of the Currency that national banks, as incident to their banking services, could make data processing services available to their customers and to other banks. The

---

**2.** But see Colson v. Hickel, 428 F.2d 1046 (5th Cir. 1970), cert. den. 401 U.S. 911, 91 S.Ct. 875, 27 L.Ed.2d 810 (1971).

Court said at 397 U.S. 156–157, 90 S.Ct. 827, 831:

"In Shaughnessy v. Pedreiro, 349 U.S. 48, 51, 75 S.Ct. 591, 90 L.Ed. 868, we referred to 'the generous review provisions' of that Act; and in that case as well as in others (see Rusk v. Cort, 369 U.S. 367, 379–380, 82 S.Ct. 787, 7 L.Ed.2d 809) we have construed that Act not grudgingly but as serving a broadly remedial purpose.

"We read § 701(a) as sympathetic to the issue presented in this case. As stated in the House Report:

" 'The statutes of Congress are not merely advisory when they relate to administrative agencies, any more than in other cases. To preclude judicial review under this bill a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review.' H.R.Rep. No. 1980, 79th Cong., 2d Sess., 41."

The Court ruled that the plaintiffs were aggrieved persons under § 702 and so entitled to judicial review.

The case most nearly on point to the present one appears to be Robinson v. McAlister, 310 F.Supp. 370 (N.D.Miss. 1970). In that case plaintiff alleged that the defendants, officials of the FHA, had violated his rights under 7 U.S.C. § 1921 et seq. and the Fifth Amendment. He also alleged that defendants had foreclosed on a deed of trust on plaintiff's property because of racial prejudice and that defendants had acted arbitrarily and capriciously in denying plaintiff an FHA loan. The court said it appeared plaintiff was seeking relief under 42 U.S.C. § 1471 et seq. (provides for financial assistance for farm housing), and it is not clear whether the court entertains plaintiff's claim based on 7 U.S.C. § 1921 et seq. Whatever, the court, relying upon Data Processing, supra, and Barlow v. Collins, 397

U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 60 (1970), held that the plaintiff was entitled to judicial review under the APA.

■■ In the present case Data Processing, Barlow, and Robinson all weigh in favor of plaintiff's obtaining judicial review under the APA. However, the APA does not confer "any additional jurisdiction not expressly authorized by a separate statutory grant of power." Arizona St. Dept. of Pub. W. v. Department of Health, E. & W., 449 F.2d 456, 464 (9th Cir. 1971). Here plaintiff could rely upon federal question jurisdiction since he is attacking the constitutionality of a statute.

(b) The parties acknowledge:

"The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' . . . or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' . . ." Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted). Also see Larson v. Domestic & Foreign Corp., 337 U.S. 682, 689–690, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

Two exceptions to the general rule permit relief against individual officers. These exceptions are (1) actions by officers beyond their statutory powers and (2) even if the actions are within the scope of authority, the powers themselves or the manner in which they are exercised are constitutionally void. Dugan, supra, 372 U.S. at 621–622, 83 S.Ct. 999. In accord with Dugan are Carter v. Seamans, 411 F.2d 767, 770 (5th Cir. 1969), Simons v. Vinson, 394 F.2d 732, 736 (5th Cir. 1968), and Gardner v. Harris, 391 F.2d 885, 887–888 (5th Cir. 1968). In the Fifth Circuit's view, "[i]n these two instances the sovereign's consent to be sued is not required and the defense of sovereign immunity is unavailable." Carter, supra, 411 F.2d at 770. Insofar as the constitutional issue is concerned, plaintiffs' cases ap-

pear to fall clearly within the second exception.[3]

■ Therefore, for present purposes it is concluded that jurisdiction is present as to the government and Farmers Home Administration on the basis of 28 U.S.C. § 2409a; and, on the basis of the federal question presented under 5 U.S.C. § 701 et seq., and the recognized *Dugan* exceptions to sovereign immunity, it is also present as to the individual employees. The motion to dismiss on jurisdictional grounds is therefore denied.

3. There is some question about jurisdiction over any of the defendants for the remaining aspects of the case. However, such determination need not be made at this juncture.

4. 67–1506. *Sales under powers conducted as sheriff's sales.* No sale of real estate under powers contained in mortgages, debt, deeds, or other lien contracts shall be valid unless the sale shall be advertised and conducted at the time and place and in the usual manner of sheriff's sales in the county in which real estate, or a part thereof is located. Ga. Code § 67–1506.
39–1101. *Sales, how advertised.* The sheriffs and coroners shall publish weekly, for four weeks, in some newspaper published in their counties respectively,—and if there be no such paper published in the county, then in the nearest newspaper having the largest or a general circulation in such county—notice of all sales of land and other property executed by him; in which advertisement he shall give a full and complete description of the property to be sold, making known the name of the plaintiff and defendant and the person who may be in the possession of such property, except horses, hogs, and cattle, which may be sold at any time by the consent of the defendant; in which case it shall be the duty of such officer to give the plaintiff 10 days' notice thereof, and also to advertise the same at three or more public places in the county where such property may be, at least 10 days before the sale. Ga.Code § 39–1101.
39–1102. *Notices published once a week for four weeks.* In all cases where the law requires citations, notices, or advertisements by ordinaries, clerks, sheriffs, county bailiffs, administrators, executors, guardians, trustees, or others to be published in a newspaper for 30 days, or for four weeks, or once a week for four weeks, it shall be sufficient and legal to publish the same once a week for four weeks (that is, one inser-

## CONSTITUTIONALITY OF GEORGIA CODE § 67–1506

Plaintiffs' challenge is to the statutory procedure pursuant to which his equity in the land was foreclosed (or threatened). The notice that is required by the statutory scheme is an advertisement in the county newspaper (if there is no county newspaper, then the nearest newspaper having the largest or a general circulation in the county should be used) once a week for the four weeks immediately preceding the day the sale is to take place; the sale shall be made by public outcry at the courthouse.[4]

tion each week for each of the four weeks) immediately preceding the term or day when the order is to be granted, or the sale is to take place; and the number of days between the date of the first publication and the term or day when the order is to be granted or the sale to take place, whether more or less than 30 days, shall not in any manner invalidate or render irregular the said notice, citation, advertisement, order or sale. Ga. Code § 39–1102.
39–1201. *Place, time and manner of sales.* Sales of property taken under execution shall be made by the sheriffs or coroners only at the courthouse of the county where such levy was made, on the first Tuesday in each month, between the hours of 10 A.M. and 4 P.M. and at public outcry: Provided, that in all cases where any sheriff, coroner, or other levying officer shall levy any execution or other legal process upon any corn, lumber, timber of any kind, bricks, machinery, or other articles difficult and expensive to transport, said officer may sell said property without carrying and exposing the same at the courthouse door on the day of sale, but the levying officer shall give a full description of the property and the place where it is located in the advertisement of the sale. Provided further that by general order of the presiding judge of the superior court of the county, published in the official newspaper of the county and entered on the minutes of the court all sales of property under execution within a county may be held at a place other than at the courthouse where, in the opinion of such judge, the holding of such sales before the courthouse door would create an undue traffic hazard or unnecessarily endanger the person or property of persons using the public streets; but no such property shall be sold at a place different from that shown in the advertisement of the sale. Any change in the place of such sales within any county, as herein provided, shall also apply to all public sales

Plaintiffs allege the statutory scheme does not provide adequate notice or afford opportunity to be heard and so does not comport with due process.

■■ If the challenged statute were one which provided that any security interest holder could upon default by the debtor invoke the summary procedure, the unconstitutionality would be apparent. Plaintiff's equity interest in the land and the right to its "use" [5] would constitute property entitled to procedural due process. Fuentes v. Shevin, 407 U.S. 67, 84, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, ·23 L.Ed.2d 349 (1969). The usual requisites of procedural due process are notice and a prior hearing. Sniadach v. Family Finance Corp., 395 U.S. 337, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (Harland, J. concurring). To satisfy due process, notice "must be such as is reasonably calculated to reach interested parties." Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 318, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950). Absent a showing that defendants could not give plaintiff personal notice, newspaper notice would not be "reasonably calculated" to reach plaintiff. Although the form of the hearing required may vary according to the nature of the case, *Fuentes, supra*, 407 U.S. at 82, 92 S.Ct. 1983, the hypothetical statute would afford no opportunity for hearing at all and consequently would be clearly unconstitutional.[6] E. g. Johnson v. Glenn's Furniture Company, Inc., No. 16089 (N.D.Ga.1972) (Three-judge) (Personal property foreclosure); Mason v. Garris, 360 F.Supp. 420 (N.D.Ga. 1973) (Three-judge) (foreclosure of liens).

This Georgia statute, however, unlike the personal property foreclosure acts, does not itself create any rights in creditors. Rather, its terms are limiting. It provides:

"67–1506. *Sales under powers conducted as sheriff's sales.* No sale of real estate under powers contained in mortgages, debt, deeds, or other lien contracts shall be valid unless the sale shall be advertised and conducted at the time and place and in the usual manner of sheriff's sales in the county in which real estate, or a part thereof, is located."

Thus, the legislative mandate sets minimal requirements for the exercise of any contractual power of sale contained in security instruments. In this sense, it may be deemed protective of consumer interests. The statute does not come into operation unless there already exists a power of sale contained in a deed to secure debt, mortgage, or other lien contract. It does not direct that a power of sale be employed; it merely specifies the minimal procedures to be employed once the parties have entered into a contractual relation. Thus, the point at which analysis should begin is

---

within the county required to be conducted in the manner of sheriff's sales. Ga.Code § 39–1201.

5. The government contends that, irrespective of its admitted use of the Georgia statute, it is governed only by some supreme Federal Law in foreclosure. What this constitutes is unclear. However, the court is convinced that in dealing with federal constitutional rights in foreclosure as contained in *Fuentes*, they would apply to any procedure employed whatever the umbrella label.

6. In the court's view the summary repossession and seizure of consumer goods is the vice sought to be abated by *Fuentes*. By the nature of its character, real estate can-

not be "seized" in the physical sense and this might be the basis for some distinction between it as security and personal property. However, a reading of *Fuentes* and the broad language describing the property rights sought to be protected by due process convinces otherwise. The equity of a debtor in realty is "a significant property interest" and the unimpaired right to its use without the threat of summary foreclosure would appear to fall well within the Supreme Court language. See also Boddie v. Connecticut, 401 U.S. 371 at 379, 91 S.Ct. 780, 28 L.Ed. 2d 113 (1971). Property distinctions are not viable. Fuentes v. Shevin, 407 U.S. 67 at 88–90, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

with the agreement between the parties. In the contract in question, the grantor-debtor

"COVENANTS AND AGREES as follows: (23) Upon default by Borrower as aforesaid, the Government, its agents, and its assigns may, with or without taking possession of the property, foreclose this deed by selling the property as a whole or in parcels at public sale (which need not be on a legal sales day) before the courthouse door in the county where the property lies to the highest bidder for cash, after advertising the time, place, and terms of such sale once a week for four weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which the Sheriff's advertisements for such county are published and if the land lies in more than one county in a newspaper in which the Sheriff's advertisements for any one of such counties are published, all other notice being hereby waived by Borrower, and thereupon execute and deliver to the purchaser or purchasers at such sale a sufficient conveyance of the premises in fee simple, which conveyance shall contain recitals as to the happening of the default upon which the execution of the power of sale herein granted depends, and Borrower hereby constitutes and appoints the Government the agent and attorney-in-fact of Borrower to make such recitals, and hereby covenants and agrees that the recitals so made by the Government, or assigns, shall be binding and conclusive upon Borrower, and that the conveyance thereby made by the Government, or assigns, shall be binding and conclusive upon Borrower and effectual to bar all equity of redemption of Borrower in and to the premises; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise."

■■ By so contracting, the plaintiffs ostensibly forego the constitutional due process rights of prior notice [7] and hearing in the *Fuentes* sense. As an abstract proposition, due process is one of those constitutional rights which can under certain circumstances be waived, even in the criminal context. E. g. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). More specifically, it can be waived in civil contracts between debtor and creditor. A careful reading of D. H. Overmyer Co. v. Frick Co., 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972) and its companion case Swarb v. Lennox, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972) convinces that the Georgia statute is not unconstitutional on its face. Those cases involved confession of judgment provisions in instruments of debt under Ohio and Pennsylvania law, each equally as restrictive, if not more so, of the due process rights in question as the Georgia statute. They clearly stand for the proposition that such statutes are not per se violative of due process rights "as under appropriate circumstances, a cognovit debtor may be held effectively and legally to have waived those rights he would possess if the document he signed had contained no cognovit provisions."[8]

The nub of the question here, as there, is not the lawfulness of the statute, but whether the contractual provision itself is valid and binding between the parties. The standard for such determination is, unfortunately, not yet clear. In *Overmyer*, the court simply held, even under criminal standards, that the facts of that case amply showed a valid waiver by the corporate debtor. In *Swarb*, the court carefully refrained from approval of an artificial standard of $10,000 per year income set by the lower court to delineate the class which might contest such a contractual waiver.

7. Here, in spite of its terms, the plaintiffs received adequate actual notice of the intent to foreclose, but no opportunity for hearing prior to inception of the foreclosure process by advertisement.

8. This comports with an earlier Supreme Court case upholding the right to exercise a Georgia contractual power of sale without notice. Scott v. Paisley, 271 U.S. 632, 46 S.Ct. 591, 70 L.Ed. 1123 (1926).

As disquieting as it may be, the rule seems to depend on the facts of each particular case. "Our holding, of course, is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue." D. H. Overmyer v. Frick Co., 405 U.S. 174 at 188, 92 S.Ct. 775 at 783, 31 L.Ed.2d 134 (1972). In *Fuentes* itself, the possibility of waiver was recognized but rejected because of (1) the absence of any language purporting to show an agreement or waiver in connection with the right to repossess and (2) the lack of awareness by the parties of the significance of the provision. "There was no bargaining over contractual terms between the parties who, in any event, were far from equal in bargaining power. The purported waiver provision was a printed part of a form sales contract and a necessary condition of the sale. The appellees made no showing whatever that the appellants were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights." Fuentes v. Shevin, 407 U.S. 67 at 95, 92 S.Ct. 1983 at 2002, 32 L.Ed.2d 556 (1972). This is precisely the conclusion reached by Justice Gunter in the recent Georgia Supreme Court case upholding the constitutionality of § 67–1506. "Such an agreement is not constitutionally infirm per se; and if such an agreement was voluntarily, intelligently, and knowingly made, which may be a question of fact in some circumstances, then such an agreement for divestment is constitutionally enforceable." Ruff v. Lee, 230 Ga. 426 at 432, 197 S.E.2d 376 at 379 (1973) (concurring opinion). For similar post-*Sniadach* reasoning in a case upholding the facial constitutionality of a comparable District of Columbia fore-closure scheme, see Young v. Ridley, 309 F.Supp. 1308 (D.D.C.1970). A valid waiver was apparently assumed in Brunswick Corporation v. J & P, Inc., 424 F.2d 100 (1970).

The pragmatic effects of this conclusion on commercial credit and title transfers in Georgia are not insignificant. The doubts to be cast on contractual foreclosure or titles emanating therefrom are real in marginal situations. In questionable cases, the creditor may wish to obtain a quitclaim deed from the debtor-in-foreclosure or rely on the earlier practice of judicial foreclosure after judgment under Georgia Code § 67–1501 et seq. In terms of contractual practice, the ingenuity of the bar may well resolve any future doubts as to the validity of a purported waiver.[9] Some of the effects may well be salutary, particularly in reference to those second lien holders whose short-term high-interest loans are frequently secured by contracts with the same powers and who do not always bear the same relationship with the debtor as do the so-called first mortgage residential and commercial lenders. In any event, the result is the only reasonable one in the mind of the court. To rule otherwise would be a serious inroad in the traditional right of freedom of contract.

■ Here, the defendants have moved for summary judgment. As the validity of the waiver cannot be judged on the record, it is denied. Evidence of the attendant facts must be heard by the court absent a governmental decision to seek judgment prior to a judicial foreclosure. A hearing will be set for consideration of such option as well as the other claims in the petition.

For the reasons stated, the motion to dismiss on jurisdictional grounds is denied and the motion for summary judgment is likewise denied.

It is so ordered.

---

9. For some hypothetical suggestions, see Comment, Fuentes v. Shevin: The Constitutionality of Texas' Landlord Laws and Other Summary Procedures, 25 Baylor L.R. 215, 234–237 (1973).