Ellie G. **RICKER** and **Elizabeth Ricker**, Plaintiffs,

v.

**UNITED STATES** of America et al., Defendants.

**Civ. No. 74–71–ND.**

United States District Court, D. Maine, N. D.

June 18, 1976.

Remington O. Schmidt, Presque Isle, Me., for plaintiffs.

Lynwood E. Hand, Houlton, Me., for defendant Uptons.

Peter Mills, Portland, Me., Rufus E. Stetson, Jr., Bangor, Me., David J. Spader, U.S. Dept. Agriculture, Harrisburg, Pa., Gordon H. S. Scott, Augusta, Me., for defendants.

OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

In this action, which is now before the Court on cross-motions for summary judgment, plaintiffs Ellie G. Ricker and Elizabeth Ricker seek to nullify the foreclosure sale of their farm by the Farmers Home Administration (FmHA). Named as defendants are the United States of America, the Secretary of Agriculture and three FmHA officials, and Ivan and Vivian Upton, who purchased the property at the foreclosure sale.

Plaintiffs allege that the foreclosure procedures utilized by FmHA failed to afford them notice and an opportunity to be heard and thus violated the Due Process Clause of the Fifth Amendment. They also charge that the Maine nonjudicial foreclosure statute, 14 Me.Rev.Stat.Ann. §§ 6203–04, pursuant to which the foreclosure was effected, is void because in violation of the Due Process Clause of the Fourteenth Amendment. Finally, they attack their underlying indebtedness to FmHA on the ground that the loans were improperly made and enforced by FmHA in violation of the agency's alleged obligations to make only sound loans to plaintiffs and to supervise plaintiffs' farming operations. *See* 7 U.S.C. §§ 1983(b), (d); 7 CFR §§ 1802.1–

1802.67, 1831.3. As relief, plaintiffs seek a declaratory judgment that the foreclosure and subsequent sale of the property were void and without effect and an order enjoining defendants from removing plaintiffs from their land, "taking any action based upon the purported foreclosure," or seeking repayment of the outstanding loans.[1]

Subject matter jurisdiction is predicated, properly, on 28 U.S.C. § 1331(a). Jurisdiction over the United States is available pursuant to 28 U.S.C. § 2410, and possibly also under 28 U.S.C. §§ 1346(f) and 2409a. *See Law v. United States Department of Agriculture*, 366 F.Supp. 1233, 1235 (N.D. Ga.1973). In addition, plaintiffs have properly invoked jurisdiction over the defendant officials under Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706. *See Elton Orchards, Inc. v. Brennan*, 508 F.2d 493, 497 (1st Cir. 1974); *Law v. United States Department of Agriculture, supra*, at 1235–37; 5 U.S.C. §§ 702, 706(2)(B).

■ For the reasons to be stated, the Court holds that the foreclosure and sale of plaintiffs' farm were effected in violation of their rights to due process under the Fifth Amendment, and hence are void and of no effect. The Court therefore does not reach the question whether the Maine nonjudicial foreclosure statute violates the Due Process Clause of the Fourteenth Amendment.[2] Nor does the Court deem it appropriate at this time to consider the validity of the loans secured by the FmHA mortgage.[3]

---

**1.** In their complaint plaintiffs also seek "money damages." It is not clear, however, exactly what the nature of these damages is, or from which defendants they are being sought. Moreover, plaintiffs do not appear to be pressing their damage claim. The complaint acknowledges that the anxiety suffered by plaintiffs as a result of defendants' acts cannot be compensated by money damages, *see Cole v. Creamer*, Civil No. 75–31–SD, slip op. at 8–9 (D.Me., Feb. 17, 1976); *Wallace v. Coca-Cola Bottling Plants, Inc.*, 269 A.2d 117, 121 (Me. 1970), and no other damages are alleged. In any event, it is clear that damages cannot be obtained in this Court from any of the defendants. Insofar as plaintiffs might seek damages from the federal officials in their individual capacities, the claim must be dismissed for failure to allege objective or subjective bad faith. *See Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Economou v. United States Department of Agriculture*, 535 F.2d 688 (2d Cir., 1976). To the extent plaintiffs might seek damages from the United States, or from the federal officials in their official capacities, the Court of Claims would be the proper forum for a claim under the Tucker Act, as the asserted damages exceed $10,000, 28 U.S.C. §§ 1346(a)(2), 1491; and any claim for damages under the Federal Tort Claims Act would be subject to dismissal for failure to comply with mandatory administrative claim procedures. 28 U.S.C. § 2675. If plaintiffs seek damages from the defendant Uptons, there is no independent basis for jurisdiction as between these private citizens of the same state, and no basis for pendent jurisdiction, since the claims against the federal defendants cannot be sustained. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

**2.** Nor can this opinion easily be extended to reach the question whether the use by a non-federal mortgagee of the Maine nonjudicial foreclosure statute violates the Due Process Clause of the Fourteenth Amendment. Any challenge to the use of that procedure by such a mortgagee would have to clear the hurdle of establishing "state action," a consideration not involved in the present case. *See, e. g., Northrip v. Federal National Mortgage Association*, 527 F.2d 23 (6th Cir. 1975). Further, the question whether a mortgagor has waived any right to due process can be determined only in the light of the facts of each case. *See Swarb v. Lennox*, 405 U.S. 191, 200, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972); *Bryant v. Jefferson Federal Savings & Loan Association*, 166 U.S.App.D.C. 178, 509 F.2d 511, 515–16 (D.C.Cir.1974). *See also Gunter v. Merchants Warren National Bank*, 360 F.Supp. 1085 (D.Me.1973) (three-judge court) (invalidating prejudgment attachment statute); *Kramer v. Inhabitants of the Town of Linneus*, 144 Me. 239, 67 A.2d 536 (1949) (invalidating tax lien foreclosure statute as applied to nonresident); Henry and Cole, Are Maine's Real Property Mortgage Foreclosure Statutes Constitutional?, 8 Me.Bar Bull., May 1974, at 1.

**3.** As a result of the ruling in this case, it will be for FmHA to determine whether to institute new foreclosure proceedings or to make other attempts to enforce the loans made to the Rickers; that agency is the appropriate forum for determination of the validity of the loans, at least in the first instance. Judicial consideration at this time would be premature. *See McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Elton Orchards, Inc. v. Brennan, supra*, 508 F.2d at 497.

## I.

Plaintiff Ellie G. Ricker is 74 years old; his wife, plaintiff Elizabeth Ricker, is 78 years old. Mr. Ricker purchased an 80-acre potato farm in Blaine, Aroostook County, Maine in 1943. He farmed the land until 1970, and he and his wife still reside on the property. Between April 1966 and March 1968 the Rickers executed a series of five promissory notes to FmHA in consideration of operating loans authorized by the Consolidated Farmers Home Administration Act of 1961, as amended, 7 U.S.C. § 1921 *et seq.* In August 1968 they applied for a sixth loan to harvest the 1968 potato crop. At that time substantial balances were due and owing on the first five notes, and FmHA required the Rickers to execute and deliver a mortgage deed on the farm to secure all six promissory notes.

By May 1970 the Rickers had retired from farming and were living on a small fixed income. Substantial unpaid balances remained on the six notes. An FmHA official visited the Rickers on at least four occasions in 1970 and 1971 to attempt to work out a resolution of the debt. He proposed that the Rickers voluntarily transfer the farm to FmHA or at least rent it to produce income that might pay off the debt. The Rickers rejected these proposals.

In the spring of 1972, on the recommendation of FmHA officials in Maine and after approval by the FmHA Office of General Counsel, FmHA decided to foreclose on the Ricker mortgage. At this time outstanding balances on the promissory notes totaled $17,676.84, plus substantial interest. On April 14, 1972 FmHA mailed each of the Rickers an identical "Notice of Acceleration of Indebtedness and Demand for Payment." These were sent by certified mail, return receipt requested. The notices recited the promissory notes and past due indebtedness thereon, demanded immediate payment and concluded:

> Unless full payment of said indebtedness is received on or before May 15, 1972, appropriate measures will be taken to foreclose the said mortgage and pursue any other available remedies.

The agency received receipts for these letters signed by the Rickers and dated April 18, 1972. After expiration of the 30-day period allowed in the notices, FmHA instituted nonjudicial proceedings for foreclosure of the Rickers' mortgage pursuant to 14 Me.Rev.Stat.Ann. § 6203(1): that is, FmHA caused to be published a notice of foreclosure on three successive weeks in the Presque Isle, Maine *Star Herald* and recorded a copy of the notice and a certificate of publication in the Southern Aroostook Registry of Deeds on June 22, 1972.[4] No written notice of the foreclosure sale was served on the Rickers, and FmHA did not utilize its option under 14 Me.Rev.Stat.Ann. § 6203(2) to have the Rickers served with an attested copy of the newspaper advertisement. The Rickers testified in their affidavits, which are uncontroverted, that they "heard that the Farmers Home Administration went through some kind of procedure with a newspaper concerning our farm" but did not see the notices themselves nor understand that FmHA had foreclosed.

Following publication of the notice of foreclosure, the Rickers had one year to redeem the property by satisfying the debt. 14 Me.Rev.Stat.Ann. § 6204. An FmHA official visited the farm shortly before the end of the period of redemption to appraise the property and warn the Rickers that sale was imminent. The Rickers state, however, that they remained unaware of the sale until afterward and then learned of it only by word of mouth. The Rickers made no further payments on the notes; and in July 1974 FmHA sold the farm to the Uptons for $15,600. FmHA delivered to the Uptons a quit claim deed and took back a purchase

---

4. Maine law supplies several alternatives to mortgagees seeking to foreclose. Foreclosure by possession may be effected by peaceable entry or under a conditional judgment for writ of possession. 14 Me.Rev.Stat.Ann. §§ 6201, 6251–6252. Foreclosure may be effected by published notice and expiration of the period of redemption, the procedure followed in this case by FmHA. *Id.* at §§ 6203–6204. Finally, by a recent amendment to the statutes, foreclosure may be effected by a civil court action. 14 Me.Rev.Stat.Ann. §§ 6321–6325 (1975 Supp.).

money mortgage in the amount of $14,400, which has not yet been discharged.

## II.

It cannot be doubted that the Rickers were "deprived of . . . property, without due process of law" in violation of the Fifth Amendment. First, the foreclosure and sale were initiated and carried out by federal employees acting on behalf of the federal government: they plainly were bound to observe the requirements of the Fifth Amendment. *See, e. g., Arnett v. Kennedy,* 416 U.S. 134, 164, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (Powell, J., concurring); *Rudder v. United States,* 96 U.S.App.D.C. 329, 226 F.2d 51, 53 (1955). Second, the Rickers as mortgagors retained under Maine law the right to undisturbed enjoyment of the farm until entry or foreclosure by the mortgagee. *Pettingill v. Turo,* 159 Me. 350, 359, 169 A.2d 367 (1963). The Government's foreclosure thus clearly deprived plaintiffs of an interest in property protected by the Fifth Amendment. *See Fuentes v. Shevin,* 407 U.S. 67, 84, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Law v. United States Department of Agriculture, supra,* 366 F.Supp. at 1238 & n. 6; *United States v. Certain Land in the City of Augusta,* 220 F.Supp. 696, 699 (D.Me.1963). Finally, the procedures utilized by FmHA plainly failed to afford the Rickers the procedural safeguards which due process requires. Although the requirements of due process may vary with differing circumstances, Supreme Court decisions have fully established that procedural due process demands, at a minimum, notice and an opportunity to be heard. *Fuentes v. Shevin, supra,* 407 U.S. at 80–82, 92 S.Ct. 1983; *Boddie v. Connecticut,* 401 U.S. 371, 377–79, 91 S.Ct. 780, 28 L.Ed. 113 (1971); *Armstrong v. Manzo,* 380 U.S. 545, 550–52, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Gunter v. Merchants Warren National Bank,* 360 F.Supp. 1085, 1088 (D.Me.1973) (three-judge court). In the instant case, the Rickers were provided neither of these essential protections.

The Government asserts that the Rickers received satisfactory notice of the impending foreclosure. To be adequate, notice "must be such as is reasonably calculated to reach interested parties." *Mullane v. Central Hanover Bank & Trust Co., supra,* 339 U.S. at 318, 70 S.Ct. at 659. The newspaper foreclosure notices, which the Rickers did not see, plainly failed to meet this standard. "[N]otice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Schroeder v. City of New York,* 371 U.S. 208, 212–13, 83 S.Ct. 279, 282, 9 L.Ed.2d 255 (1962). *Accord, Walker v. City of Hutchinson,* 352 U.S. 112, 115–16, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); *Mullane v. Central Hanover Bank & Trust Co., supra,* at 314–19, 70 S.Ct. 652. The only communication received by the Rickers which could even remotely be construed as notice was the "Notice of Acceleration of Indebtedness and Demand for Payment." But this document merely stated that the Rickers' debt was accelerated, that payment was immediately due and demanded, and that unless full payment were forthcoming by May 15, 1972, "appropriate measures [would] be taken to foreclose the said mortgage and pursue any other available remedies." This threat of foreclosure simply did not give clear notice that foreclosure proceedings would in fact be instituted. More importantly, this "Notice of Acceleration" made no pretense of extending the Rickers any opportunity to challenge the decision to institute foreclosure proceedings.

Although "the formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the . . . proceedings," *Boddie v. Connecticut, supra,* 401 U.S. at 378, 91 S.Ct. 780 at 786, the Constitution requires a meaningful and timely opportunity to be heard. *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 606, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Co.,* 416

U.S. 600, 618, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin, supra,* 407 U.S. at 80–82, 92 S.Ct. 1983. The Rickers were offered no opportunity for hearing, and no hearing was held, before their mortgage was foreclosed.

■■■■ The Government argues that any opportunity to be heard would be mere surplusage in the context of a mortgage foreclosure. The issues are open and shut: the existence of overdue debt and of a valid mortgage agreement. But this argument must fail, for two reasons. First, the simplicity of the legal issues and the improbability of any colorable challenge to the Government's position does not of itself dispel the need that the party affected have an opportunity to be heard before a final deprivation takes place. *See Mitchell v. W. T. Grant Co., supra,* 416 U.S. at 609–10, 616–18, 94 S.Ct. 1895; *Fuentes v. Shevin, supra,* 407 U.S. at 87 & n.17, 92 S.Ct. 1983; *Turner v. Blackburn,* 389 F.Supp. 1250, 1259 (W.D.N.C.1975) (three-judge court); *Garner v. Tri-State Development Co.,* 382 F.Supp. 377, 380 (E.D.Mich.1974). Second, the Rickers have brought forward challenges to the foreclosure based not only on the validity of the mortgage but also on the propriety of FmHA's decision to foreclose. They claim that the notes held by the Government lacked consideration because FmHA failed to provide the managerial assistance to borrowers allegedly required by Department of Agriculture regulations, that FmHA abused its discretion by continuing to make loans which it knew or should have known the Rickers could never repay, and that the decision to foreclose was made in disregard of policy considerations in favor of compromising or postponing payment of the underlying debt. *See generally* 31 U.S.C. §§ 952–53; 7 CFR § 1867.1 *et seq.* The Rickers should have been afforded a reasonable opportunity to present these claims. At a minimum, such an opportunity would require express written notice of the impending foreclosure, informing them that they were entitled to a hearing at which they could challenge both the legal right of FmHA to foreclose and the propriety of the decision to do so. *See generally Goldberg v.*

*Kelly,* 397 U.S. 254, 266–71, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Escalera v. New York City Housing Authority,* 425 F.2d 853, 861–64 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); *Turner v. Blackburn, supra,* at 1259. Nothing approaching such an opportunity to challenge the Government's action was offered the Rickers in the present situation.

■■■■ Finally, the Government contends that the Rickers waived their constitutional rights to notice and hearing by signing the mortgage in 1968. The Court disagrees. To be effective, waiver of a constitutional right must be "voluntary, knowing, and intelligently made." *D. H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 185, 92 S.Ct. 775, 782, 31 L.Ed.2d 124 (1972); *Swarb v. Lennox,* 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972). No language in the mortgage signed by the Rickers amounted to a waiver of their due process right of prior notice and hearing. Paragraphs 12 and 18 of the mortgage, upon which the Government relies, do no more than state the Government's right to foreclose under Maine law upon the occurrence of certain events. *Cf. Fuentes v. Shevin, supra,* 407 U.S. at 96, 92 S.Ct. 1983; *Turner v. Blackburn, supra,* at 1255, 1260–61. Even if the mortgage had contained language which might be construed as a waiver, the Ricker mortgage was a contract of adhesion, and the Government has "made no showing whatever that the . . . [Rickers] were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights." *Fuentes v. Shevin,* 407 U.S. *supra,* at 95, 92 S.Ct. at 2002. It is undisputed that the Rickers are an elderly farming couple, now in their seventies; that neither of them received more than a sixth grade education; and that although they had many dealings with FmHA over the years, they were unfamiliar with legal documents and had no prior experience of a foreclosure proceeding. The Rickers have testified that they did not read the mortgage and that they had no understanding at the time they executed the mortgage that they were foregoing

their rights to notice and hearing before foreclosure and sale of their farm. No attorney was advising them, and at no time did anyone explain to them that by signing the mortgage they were waiving their rights to notice and hearing. Under these circumstances, the signing of the mortgage plainly did not constitute a "voluntary, knowing, and intelligently made" waiver of the Rickers' due process rights.[5]

Accordingly, the Court has concluded that the procedures by which FmHA effected the foreclosure and sale of the Rickers' farm violated their Fifth Amendment rights to due process.

### III.

Defendants Ivan and Vivian Upton, who purchased the Ricker farm at the foreclosure sale, contend that they are bona fide purchasers for value and are entitled to the property free of any claim by plaintiffs. See 33 Me.Rev.Stat.Ann. § 201 (1965); Hayden v. Russell, 119 Me. 38, 109 A. 485 (1920); Knapp v. Bailey, 79 Me. 195, 9 A. 122 (1887); IV American Law of Property § 17.10 (A. Casner ed. 1952). Under the applicable Maine law, however, a quit claim deed is only effective to convey whatever interest the grantor may have had in the land. Reed v. Knights, 87 Me. 181, 32 A. 870 (1895); Coe v. Persons Unknown, 43 Me. 432 (1857); Butman v. Hussey, 30 Me. 263 (1849). Consequently, if the Government's foreclosure was ineffective, the Government obtained no title to the Ricker farm which could be conveyed to the Uptons. In any event, it is clear that the Uptons were not bona fide purchasers. The quit claim deed they received from FmHA expressly recited that the premises had been acquired "by virtue of foreclosure proceedings." The proof of publication recorded in the Southern Aroostook Registry of Deeds disclosed that the foreclosure had been effected by nonjudicial process. The

Rickers continued to occupy the property and to claim title. Under Maine law a purchaser at a foreclosure sale cannot claim protection as a bona fide purchaser where, as here, it appears from documents and facts known at the time of purchase that there may be a substantial defect in the seller's claim of title. See Rowe v. Hayden, 149 Me. 266, 101 A.2d 190 (1953); Devine v. Tierney, 139 Me. 50 (1942); Hopkins v. McCarthy, 121 Me. 27, 31, 115 A. 513 (1921); Knapp v. Bailey, supra. The sale by FmHA to the Uptons therefore did not cut off plaintiffs' interest in the property.

### IV.

The Court holds that the foreclosure of plaintiffs' mortgage was effected by FmHA in violation of plaintiffs' Fifth Amendment rights to due process and that the sale of plaintiffs' farm to defendants Upton was ineffective to divest plaintiffs' title to the premises. Accordingly, judgment will be entered for plaintiffs against defendants declaring that the foreclosure and sale of their property were void and without effect because the foreclosure procedures utilized violated plaintiffs' rights under the Due Process Clause of the Fifth Amendment, and further enjoining defendants from removing plaintiffs from their land or taking any other action based upon the purported foreclosure. In all other respects, plaintiffs' claims for relief are denied. Plaintiffs' counsel will prepare a proposed form of judgment, to be approved as to form by defendants' counsel and submitted for entry by the Court.

IT IS SO ORDERED.

---

**5.** Decisions cited by the Government are distinguishable. In *D. H. Overmyer Co. v. Frick Co., supra*, the Court held valid a waiver of service provision in a contract executed between two corporations acting on the advice of counsel. In *Hoffman v. United States Department of*

*Housing and Urban Development*, 519 F.2d 1160 (5th Cir. 1975), the court found that a mortgagor, who failed to respond to five written notices of default requesting contact in order to explain the delinquency, had received adequate notice of an impending foreclosure.