**Brenda Joyce NORTHRIP, Plaintiff,**

**v.**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, a corporation organized and existing under the laws of the United States, Defendant.**

**Civ. A. No. 40074.**

United States District Court,
E. D. Michigan, S. D.
Feb. 28, 1974.

George L. Corsetti, Michigan Legal Services Assistance Program, Wayne State Law School, Fred S. Findling, Paul Rosen, Detroit, Mich., Hoyt P. Spicer, II, Wayne County Neighborhood Legal Service, Detroit, Mich., for plaintiff.

W. Gerald Warren and James N. Candler, Jr., of Dickinson, Wright, McKean & Cudlip, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

KEITH, District Judge.

This is a diversity action which was removed from state court pursuant to 28 U.S.C. § 1441. In the complaint, plaintiff challenges the constitutionality of Chapter 32 of the Michigan Statutes, being M.S.A. 27A.3201 et seq., M.C.L.A. § 600.3201 et seq., entitled "Foreclosure of Mortgages by Advertisement", on the ground that the statute allows the taking of property in violation of the due process of law as guaranteed by the 14th Amendment of the United States Constitution and Article I, Section 17 of the Michigan Constitution of 1963.

The facts in the case disclose that plaintiff borrowed from Auer Mortgage Company, a Michigan Corporation, the principal sum of $11,000. To secure said indebtedness, plaintiff executed and delivered to Auer a note and a mortgage on her home. Auer's interest in the mortgage was subsequently assigned to defendant in consideration of defendant's purchase of the mortgage in con-nection with its secondary market operations for home mortgages.[1]

As stipulated by the parties, plaintiff made her last payment on the note and mortgage in question on April 6, 1972, that being the April 1972 payment. Since April 1, 1972, interest has continued to accumulate upon the principal balance of $10,857.18 at a rate of 8½% per annum. Because of plaintiff's failure to make payments, defendant foreclosed the mortgage by advertisement in strict compliance with the requirements of the state statute governing foreclosure by advertisement. The sale was held on October 19, 1972, at which time defendant was the successful bidder with a bid of $11,476.68. This amount was the aggregate of principal balance, accrued interest and cost of foreclosure to date of sale. Six months thereafter, the statutory redemption period expired and defendant became titleholder of the mortgaged premises.

Plaintiff has remained in possession continuously since that time and will not voluntarily surrender the premises to defendant. Defendant, therefore, intends to obtain possession pursuant to a summary proceedings statute.[2]

Plaintiff has brought this action seeking to retain possession of the mortgaged premises by attacking the procedure by which defendant foreclosed the mortgage. Specifically, plaintiff is asking this Court to set aside the foreclosure on the grounds that Chapter 32 of the Michigan Statutes is unconstitutional for failing to provide a homeowner with notice and a hearing prior to the sale of the mortgaged premises as required by the due process clauses in the Michigan and United States Constitutions. Plaintiff has also requested such other relief as is just and equitable.

 The due process clause in the 14th Amendment of the United States

1. Defendant is a corporation presently organized under the Housing and Urban Development Act of 1968. It was created for the purpose of maintaining a secondary market for home mortgages by buying mortgages when credit is tight and by selling them when credit is plentiful.

2. M.S.A. 27A.5701 et seq., M.C.L.A. § 600.-5701 et seq.

Constitution provides that no state shall take any action which deprives a person of his property without due process of law. In order to sustain an action under this provision, plaintiff must demonstrate that there was state action involved in the alleged wrongful acts because the conduct of private individuals, however, wrongful or discriminatory, does not come within the purview of the 14th Amendment. Hall v. Garson, 430 F.2d 430, 439 (5th Cir. 1970); Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 172, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); Civil Rights Cases, 109 U.S. 3, 11, 3 S. Ct. 18, 27 L.Ed. 835 (1883).

■ While the principles of the 14th Amendment may be easy to state, the question of what constitutes "state action" frequently causes great difficulty. In a recent decision, Moose Lodge No. 107 v. Irvis, *supra,* 407 U.S. at 173, 92 S. Ct. 1965, the Supreme Court provided guidance as to what constitutes state action with respect to the equal protection clause under the 14th Amendment. The Court held that state action could not be found unless the state had "significantly involved" itself with the challenged conduct. This test for state action is also applicable to the due process provision under the 14th Amendment. See Adams v. Southern California First National Bank, 492 F.2d 324 (CA9 1973). Accordingly, Michigan involvement in the taking of property under the challenged foreclosure process should be considered with this "significantly involved" concept in mind.

The Michigan statute in question provides in part:

27A.3201, M.C.L.A. § 600.3201: Every mortgage of real estate, containing therein a power of sale, upon default being made in any condition of

such mortgage, may be foreclosed by advertisement, in the cases and in the manner hereinafter specified.

27A.3204, M.C.L.A. § 600.3204: To entitle any party to give a notice as hereinafter prescribed, and to make such foreclosure, it shall be requisite:

(1) That some default in a condition of such mortgage shall have occurred, by which the power to sell became operative. . . .

A review of the above statutory provisions shows that the statute does not come into operation unless a power of sale exists in a mortgage and is activated by some default in a condition of such mortgage. In essence, the sale (or taking) of the property interest does not occur as a result of a directive from the state of Michigan, but rather as a result of a directive from a contractual arrangement. The legislative mandate merely specifies minimal procedures[3] to be employed once the parties have entered into such a contractual relationship.

Plaintiff contends that the statutory scheme amounts to state action for a number of reasons. First, it is alleged that there is state action because the sheriff and register of deed are involved in the foreclosure process.[4] Plaintiff maintains that the direct involvement of a state official constitutes state action and cites a number of cases in support of the position, including Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Griffin v. Maryland, 378 U.S. 130, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); and Shelley v. Kraemer, *supra.* All of the cases cited, however, are distinguishable from the present case because none of them involve a factual situation where a state has sought to establish minimal requirements with re-

---

3. The statute does not prevent parties from making additional requirements.

4. The Sheriff may be used at the option of the parties under Section 27A.3216, M.C.L.A. § 600.3216, which provides that the sale

"shall be made by the person appointed for that purpose in the mortgage, or by the sheriff . . .". The Register of deeds is required to record the deed of sale under Section 27A.3232, M.C.L.A. § 600.3232.

spect to a deprivation which occurs as a result of a contractual agreement entered into by the person being deprived.

█ State action does not necessarily result whenever a state renders any sort of benefit or service to a private entity or seeks to regulate private activity in any degree whatever. See Moose Lodge No. 107 v. Irvis, *supra*, 407 U.S. at 173, 92 S.Ct. 1965. As noted earlier, the state activity must be significant. Here, where the foreclosure is authorized by a power of sale in a contractual arrangement, the activity of the state officials does not appear to be significant.

In a second argument, plaintiff contends that state action exists because the statute authorizes a private party to perform a function which is governmental in nature. See Hall v. Garson, supra. Specifically, plaintiff charges that the statute vests the private party with the right, power, and authority to make a unilateral determination of default and to sell and eventually transfer title to property. The Court is unable to find state action on the basis of this claim because (1) the contract, not the statute, authorizes the foreclosure process and (2) plaintiff has presented no authority which suggests that the functions under the foreclosure process are governmental in nature in Michigan.[5]

Plaintiff also claims that state action exists because the statutory scheme pervasively governs defendant's actions. In support of this claim, plaintiff has cited Burton v. Wilmington Pkg. Auth., 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Palmer v. Columbia Gas of Ohio, Inc., 479 F.2d 153 (6th Cir. 1973); and Male v. Crossroads Associates, 337 F.Supp. 1190 (S.D.N.Y.1971). In these cases, state action was found where the statutory scheme was so pervasive that private activity in effect became state activity, with mutual benefit and interpendence existing between the state and

the private parties. Because of this, the courts recognized the endeavors as joint adventures. There is no evidence that such a situation exists here. Foreclosure by advertisement and sale appears to be a private action which creates no mutual benefits and interdependence between the state and private parties. In view of this fact and the contractual basis for the foreclosure activity, it is the opinion of this Court that the statutory scheme is not so pervasive as to constitute state action.

Finally, plaintiff argues that state action exists because the statute encourages mortgagees to seek foreclosure by advertisement, rather than by judicial process because the former method is viewed as being less costly in time, effort, and expense. To demonstrate the degree of influence which allegedly results from the existence of the Michigan statute, plaintiff points to the fact that only 52 out of 8,604 mortgages were foreclosed judicially during 1972. The remainder were foreclosed by advertisement pursuant to Chapter 32 of the Michigan statutes.

█ Courts have recognized that state action can result when the challenged activity is encouraged by state statutes. See Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); and Bond v. Dentzer, 362 F. Supp. 1373 (N.D.N.Y.1973). In view of plaintiff's allegation and the fact that the statute itself makes foreclosure by advertisement possible, the Court is of the opinion that the statute does significantly encourage foreclosure by advertisement. Accordingly, the Court concludes that state action exists.

Having established that there is state action, the Court turns to the question of whether the statute violates the due process clause of the 14th Amendment. As indicated in Palmer v. Columbia Gas of Ohio, Inc., *supra*, 479 F.2d at 165, what constitutes due process of law can

---

5. Michigan courts appear to recognize such foreclosures as private actions. See Lee v. Clary, 38 Mich. 223, 228 (1878); Guardian

Depositors Corp. v. Powers, 296 Mich. 553, 562–563, 296 N.W. 675 (1941).

only be answered in relation to the circumstances of each particular case. The basic due process requirements of the 14th Amendment are set forth in Fuentes v. Shevin, *supra,* 407 U.S. at 80, 92 S.Ct. at 1994, where the Supreme Court stated:

> For more than a century the central meaning of procedural due process has been clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." Baldwin v. Hale, 1 Wall [68 U.S.] 223, 233 [17 L.Ed. 531]. See Windsor v. McVeigh, 93 U.S. 274 [23 L.Ed. 914]; Hovey v. Elliott, 167 U.S. 409 [17 S.Ct. 841, 42 L.Ed. 215]; *Grannis v. Ordean,* 234 U.S. 385 [34 S.Ct. 779, 58 L.Ed. 1363]. It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner."

The Court also noted in the same decision, at 82, 92 S.Ct. at 1995:

> "That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." Boddie v. Connecticut, *supra* [401 U.S. 371], at 378–379, [91 S.Ct. 780, 28 L.Ed.2d 113] (emphasis is original).

■ After reviewing the provisions under Chapter 32 of the Michigan Statutes, this Court is of the opinion that the statute does not violate the due process clause of the 14th Amendment because the contractual power of sale provision which brings the statute into play must waive any due process claims. In effect, the statute is activated by a mortgage with a power of sale and it is based upon the premise that an owner who has willingly given a power of sale has contractually waived those rights not included in the statute and the terms of the power of sale. See Oades v. Standard Savings and Loan Ass'n, 257 Mich. 469, 474, 241 N.W. 262 (1932); Young v. Ridley, 309 F.Supp 1308 (D. D.C.1970). With its application being so conditioned, the statute by itself does not appear to be in violation of the due process clause. This conclusion is in accord with the holdings in Law v. United States Department of Agriculture, 366 F.Supp. 1233 (N.D.Ga.1973) and Young v. Ridley, *supra,* where other courts have considered constitutional challenges to statutes similar to the one in the present action and found them to be constitutional. It also comports with the recent decision of the Supreme Court in Swarb v. Lennox, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972), where the Court held that Pennsylvania rules and statutes relating to cognovit provisions in contractual agreements are not unconstitutional on their face, as under appropriate circumstances, a cognovit debtor may be held effectively and legally to have waived the rights he would possess if the document he signed had contained no cognovit provision. In light of this, the Court finds that the Michigan statute is not per se a violaton of the due process clause of the 14th Amendment.

Plaintiff has also challenged the statute under the due process clause in Article I, Section 17 of the Michigan Constitution. Although no Michigan cases can be found which challenge the statute under this provision, the Court is of the opinion that the statute does not violate the section for the same reason it does not violate the due process clause under the 14th Amendment of the United States Constitution. That is, the statute's implicit premises is that the owner waives any due process rights upon giving a power of sale. Michigan courts allow parties to a mortgage agreement great latitude in determining the terms

of the contractual arrangement,[6] and there are no cases which suggest that a power of sale cannot under appropriate circumstances, waive due process right under the Michigan constitution. Therefore, the Court finds that the statute is not per se a violation of Article I, Section 17 of the Michigan Constitution.

During the course of litigating issues concerning the constitutionality of the statute, plaintiff raised issues regarding the validity of the waiver in the power of sale provision which was contained in the mortgage signed by her. Among other things, plaintiff claims that the power of sale relied upon in the instant case does not amount to a waiver of constitutional rights on its face.

In Fuentes v. Shevein, supra, 407 U. S. at 94–96, 92 S.Ct. at 2002, the Supreme Court recently addressed the issue of waiver of constitutional rights. There, the Court clearly stated, that given state action, a contractual waiver of constitutional rights must be "voluntarily, intelligently and knowingly" made. It further stated:

. . . (A) waiver of constitutional rights in any context must, at the very least, be clear. We need not concern ourselves with the involuntariness or unintelligence of a waiver when the contractual language relied upon does not, on its face, even amount to a waiver.

The power of sale provision in question reads:

TWELFTH: That upon default being made in the payment of the sums of money herein agreed to be paid or in the performance of any of the covenants or agreements herein contained according to the terms hereof or of the note secured hereby the Mortgagee is hereby authorized and empowered to sell or cause to be sold the property hereby mortgaged, and to convey the same to the purchaser, pursuant to the statute in such case made and provided, and out of the proceeds of such sale to retain the moneys due under the terms of this mortgage, the costs and charges of such sale and also the attorneys' fee provided by statute, rendering the surplus moneys (if any there should be) to the said Mortgagor. In the event of public sale, the mortgaged premises may, at the option of the Mortgagee, be sold in one parcel.

■ This contractual provision simply provides that the mortgagee can sell or cause to be sold the mortgaged property "pursuant to the statute in such case made." It includes nothing about a waiver of the right to adequate notice and a hearing prior to the sale of the property. Further, the terms of the power of sale do not suggest such a waiver since the provision does not clearly state how and through what process plaintiff's house may be sold. Under Michigan statutes, the mortgagee can act to have the property sold through judicial foreclosure or through foreclosure by advertisement. The power of sale does not specify which particular statute was intended, even though this could easily have been done. Because of these factors, the Court concludes that the power of sale does not amount to a waiver on its face and therefore did not waive plaintiff's constitutional right to due process under the 14th Amendment.

■ Since plaintiff did not waive her due process rights under the 14th Amendment, the ultimate issue to be addressed is whether the foreclosure procedure utilized in the instant case satisfied minimal due process requirements. The Court concludes that it did not because the process failed to provide an adequate opportunity to be heard before the taking of a significant property interest. The Court reaches this conclusion for two reasons. First, the procedure did not include arrangements for a hearing before the sale of plaintiff's property and thereby placed upon plaintiff the burden of bringing suit to stop

6. See Virginia Cramer v. Metropolitan Federal Savings and Loan Association (No. 14149 May 29, 1973).

the selling of her property and getting a hearing on issues of default and the appropriateness of the sale. Here, where the contractual arrangement does not effectively specify the method for foreclosure or waive the due process rights, it would be unjust to require plaintiff to assume such a burden in view of the fact that the party asserting the claim is generally expected to bear the burden of legal action and proof. See Palmer v. Columbia Gas of Ohio, Inc., *supra*, 479 F.2d at 169.

Second, there is no evidence on the record that plaintiff was ever given notice of the method to be used to obtain a hearing. Even if plaintiff had been required to bring suit to stop the sale, such information would have been required under due process of law in order that plaintiff might be provided an opportunity to exercise her right to be heard effectively. See Sims v. Juras, 313 F.Supp. 1212, 1215 (D.C.Or.1969); Palmer v. Columbia Gas of Ohio, *supra*, 479 F.2d at 166.

In view of the above, the Court finds that the foreclosure must be set aside. Accordingly, judgment, with cost and attorneys' fees, is granted in favor of plaintiff.