Hubert S. GARNER and Elsie Garner,
Plaintiffs,

v.

TRI-STATE DEVELOPMENT COMPA-
NY, a Michigan corporation, and Jack
Bronkema, Register of Deeds, Kent
County, Michigan, Defendants.

Civ. A. No. 4-71428.

United States District Court,
E. D. Michigan, S. D.

Oct. 2, 1974.

Joseph F. Galvin, Detroit, Mich., for plaintiffs.

Joseph J. Cavanaugh, Detroit, Mich., for Tri-State.

George R. Cook, Grand Rapids, Mich., for Bronkema.

## MEMORANDUM OPINION

FEIKENS, District Judge.

This is a suit to set aside a mortgage foreclosure on the contention that Michigan's foreclosure by advertisement statute, M.C.L. § 600.3201 et seq., is unconstitutional as applied. It is brought under the due process clause of the fourteenth amendment, and the amount in controversy is in excess of $10,000. Jurisdiction exists under 28 U.S.C. § 1331; venue is by stipulation of the parties.

On August 23, 1972, following several related transactions, Hubert and Elsie Garner (plaintiffs) purchased approximately two acres of improved residential property from Tri-State Development Company (defendant). On the same date Hubert Garner executed a promissory note to defendant in the amount of $874,000. To secure the note, plaintiffs executed a real estate mortgage on the above-mentioned property. Paragraph 8 of the preprinted form mortgage provides:

"8. That power is hereby vested by the mortgagor to mortgagee, if default is made in the payment of said indebtedness, interest, taxes, assessments, water rates, liens or insurance premiums, or any part thereof at the time and in the manner herein agreed, to grant, bargain, sell, release, and convey the premises, with the appurtenances at public auction and to execute and deliver to the purchaser or purchasers, at such sale, deeds of conveyance, good and sufficient at law, pursuant to the statute in such case made and provided, and out of the proceeds to retain as sums due hereon, the costs and charges of such sale and the attorney fees provided by law, returning the surplus money, if any, to the mortgagor or mortgagor's heirs and assigns, and such sale or a sale pursuant to a decree in chancery for the foreclosure hereof may, at the option of the mortgagee, be made en masse."

No payment was made when the note became due, and negotiations ensued between the parties and their attorneys. These discussions ranged over various plans for refinancing the note and the possible sale of the property to the defendant. No agreement was reached, however, and defendant began procedures to foreclose the mortgage by advertisement in accordance with the requirements of M.C.L. § 600.3201 et seq. An auction was held on October 11, 1973, and following sale the sheriff executed a deed conveying the property to Tri-State.

On April 10, 1974, one day before the expiration of the statutory redemption period, plaintiffs brought this action to set aside the sheriff's deed and void the foreclosure proceedings. Specifically, plaintiffs allege that the Michigan procedure for foreclosure by advertisement, without a hearing prior to the sale, violates the fourteenth amendment. It is noted that this procedure may be invoked only if there is a power of sale in the mortgage instrument.

■ In order to avoid the necessity of convening a three-judge district court under 28 U.S.C. § 2281, the parties have agreed to litigate only the constitutionality of this statute as applied in this case. No evidentiary hearing has yet been held, and this court now treats the matter as if on cross motions for summary judgment.

Plaintiffs rely on Northrip v. Federal National Mortgage Association, 372 F. Supp. 594 (E.D.Mich.1974) (Civil Ac-

tion No. 40074), a case in which Judge Damon Keith held that the Michigan foreclosure by advertisement statute was unconstitutional as applied to the homeowner in that case. Defendant argues that *Northrip* was incorrectly decided. Assuming, arguendo, that *Northrip* is correct, defendant maintains that the instant case is distinguishable on at least three grounds. First, the mortgage instrument in the case at bar contains more specific wording than that in *Northrip;* second, the plaintiffs in the case at bar had actual notice of the foreclosure sale; and finally, this is a commercial situation.

█ The threshold question is whether there is sufficient state participation in the alleged wrongful act to bring this case within the purview of the fourteenth amendment. The application of the challenged statute is not automatic, as in the case of replevin, but may be invoked only if there is an explicit power of sale in the instrument creating the mortgage:

> "Every mortgage of real estate, containing therein a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement, in the cases and in the manner hereinafter specified." M.C.L.A. § 600.3201.

> "To entitle any party to give a notice as hereinafter prescribed, and to make such foreclosure, it shall be requisite:

> "1. That some default in a condition of such mortgage shall have occurred, by which the power to sell became operative." M.C.L.A. § 600.-3204.

Even with these contractual elements, there is significant state involvement in the foreclosure procedure. When statutory provisions encourage private activity, state action may be present. Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). This statute does encourage private parties to foreclose by advertisement. *Northrip, supra.* Additionally, two state officials participate directly in the proceedings:

The sheriff and the registrar of deeds. Though they are largely ministerial, their actions comprise state action. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

This being so, the court must determine if minimum due process standards have been met. In Fuentes v. Shevin, *supra,* the United States Supreme Court held that due process requires a pre-seizure hearing on the underlying claim, and notice of that hearing.

> "Due process is afforded only by the kinds of 'notice' and 'hearing' that are aimed at establishing the validity or at least probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his property." 407 U.S. at 97, 92 S. Ct. at 2003 (emphasis supplied).

Though *Fuentes* is a replevin case involving chattels, it is clear that the same requirements apply to all types of seizures.

> "In none of those cases did the Court hold that this most basic due process requirement is limited to the protection of only a few types of property interests." 407 U.S. at 89, 92 S.Ct. at 1998.

> "[I]f the root principle of procedural due process is to be applied with objectivity, it cannot rest on such distinctions. The Fourteenth Amendment speaks of 'property' generally." 407 U.S. at 90, 92 S.Ct. at 1999.

*See also Northrip, supra;* Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L. Ed.2d 90 (1971); Goldberg v. Kelley, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969).

In Mitchell v. W. T. Grant, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) the Supreme Court "withdraws" from the full impact of *Fuentes*; it upheld a Louisiana sequestration statute which

required the secured creditor to come before a judge who could then issue the writ upon a verified complaint or affidavit setting forth the specific facts underlying the claim. The property is seized without a prior hearing, but the procedure

"expressly provides for an immediate hearing and dissolution of the writ 'unless the plaintiff proves the grounds upon which the writ was issued' ". Mitchell v. W. T. Grant, at 618, 94 S.Ct. at 1905.

This scheme almost exactly parallels the federal practice—issuing an ex parte temporary restraining order, but requiring a hearing before the temporary relief can ripen into a preliminary injunction. Footnote 14 of *Grant* (page 620, 94 S.Ct. 1895, 40 L.Ed.2d 406) makes it clear that *Fuentes* is not overruled as to cases involving "summary self-help remedies", and Justice Powell's concurring opinion agrees with the result in *Fuentes*, though not the broad sweep of the language. Mitchell v. W. T. Grant, *supra*, concurring opinion at 623, 94 S. Ct. 1895, 40 L.Ed.2d 406.

■■■ This court reads *Grant* as modifying *Fuentes* to the extent that a seizure will be upheld though there is no prior hearing if (1) it is made under judicial supervision and (2) a hearing is provided on the underlying issue immediately after the seizure. The common denominator of both decisions is the requirement that the creditor-plaintiff bear the burden of proving the probable validity of his claim at the hearing, either before or just after the seizure.

■ Evaluated by these criteria the foreclosure by advertisement method now before the court fails to meet due process requirements. The procedure used has no provision for a hearing before or immediately after the seizure. In fact the seizure is final, and no hearing need ever be afforded. The debtor's only avenue of relief consists of going to court and seeking injunctive relief. In such a case the burden of proof is on the debtor, and even if successful he would have to bear his own attorney's fees.

This procedure must fairly be characterized as "self-help", and does not meet the requirements of either *Fuentes* or *Grant*.

Defendant contends that it has met its due process burden by giving plaintiffs actual notice of the foreclosure sale. As *Fuentes* makes clear, however, the notice refers to notice of the hearing, and establishing the probable validity of the claim underlying the seizure. Notice of the auction may enable plaintiffs to affect the sale price, but would offer no opportunity for them to contest the fact of default.

Finally, defendant says that no hearing should be required in this case since the law does not require a "useless act". In support of this argument, defendant refers to several exhibits indicating that plaintiffs knew themselves to be in default, but were unable to pay. However, plaintiffs claim certain defenses to the note, including latent defects in the design and construction of the buildings on the property. At least one exhibit now before the court supports this contention. However, as *Fuentes* makes clear, the law does not place the obligation on plaintiffs to show a valid defense:

"But even assuming that the appellants had fallen behind in their installment payments, and that they had no other valid defenses, that is immaterial here. The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing." 407 U.S. at 87, 92 S.Ct. at 1997.

■■ The due process requirements of the fourteenth amendment have not been met in this case. That does not end the inquiry, since defendant claims that plaintiffs waived their right to a hearing by signing the mortgage which included the power of sale. It is well settled that constitutional rights, including the right to a hearing, may be waived. Overmeyer v. Frick, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1971). However, in civil as well as criminal cases, the courts will indulge all

reasonable presumptions against waiver. *Fuentes* at 94, 92 S.Ct. 1983, 32 L.Ed.2d 556. *See also* Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177 (1937); Ohio Bell Tel. Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937). A contractual waiver meets constitutional requirements only if it is "voluntarily, intelligently, and knowingly made". *Fuentes*, 407 U.S. at 95, 92 S.Ct. at 2001.

A prerequisite to making this factual determination is language in the contract which the court can interpret as constituting a waiver:

> "A waiver of constitutional rights in any context must, at the very least, be clear. We need not concern ourselves with the involuntariness or unintelligence of a waiver when the contractual language relied upon does not, on its face, even amount to a waiver." 407 U.S. at 95, 92 S.Ct. at 2002.

Neither the *Fuentes* Court, nor Judge Keith in *Northrip*, found such language, and the mortgage now before the court is almost identical with that rejected in *Northrip*. However, both *Fuentes* and *Northrip* were cases involving individuals who were consumers and consumer goods, whereas plaintiffs are sophisticated business people and this is commercial property. This distinction is important in making the determination as to the existence of language of waiver as well as its voluntariness. The "power of sale" referred to in paragraph eight of the contract are "words of art" which have been used in Michigan to permit sale without prior hearing for over a century. *See* Hoffman v. Harrington, 33 Mich. 391 (1876). While this phrase may be quite meaningless to the unsophisticated, it is not unreasonable to charge businessmen with knowledge of their own vernacular. Such is the approach of section 2–104(1) of the Uniform Commercial Code; it charges merchants with knowledge of the practices of the trade. This distinction between lay and business people has sup-

port in both the law of waiver and commercial transactions. *See, for example,* Scott v. Danaher, 343 F.Supp. 1272, 1278 (N.D.Ill.1972); Swarb v. Lennox, 314 F.Supp. 1091, 1098 (E.D.Pa.1970), aff'd in part, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138; Uniform Commercial Code ¶ 9–206.

 This is not to say that the court in commercial cases will automatically presume a valid waiver, for such is not the case. This court only holds that paragraph eight of the disputed mortgage contains language sufficient on its face to amount to a waiver in a commercial setting. A factual hearing must still be conducted to determine whether this waiver was knowingly and intelligently made, and if so whether it was also voluntarily made. *See* Overmeyer v. Frick, *supra*; Swarb v. Lennox, *supra*.[1]

Accordingly,

The clerk is ordered to schedule a pretrial conference at which time a hearing date will be selected.

---

1. The court is aware of those cases in which cognovit note statutes have been held unconstitutional for failure to provide a mandatory hearing on the issue of waiver. In view of the result in *Overmeyer*, however, the better course is to require such a hearing.