**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**Grady P. MORRISON, Defendant.**

**Civ. A. No. 82–AR–1811–M.**

United States District Court, N.D. Alabama, M.D.

Aug. 26, 1983.

Addendum Sept. 6, 1983.

---

Daniel E. Morris, James S. Hubbard, Anniston, Ala., for Grady Morrison.

## MEMORANDUM OPINION

ACKER, District Judge.

Plaintiff, Federal Deposit Insurance Corporation (FDIC), foreclosed on real property securing a promissory note co-signed by defendant Grady P. Morrison (Morrison) and now sues for a deficiency judgment. Having heard testimony offered by both parties and having carefully examined the exhibits, the Court makes the following findings of material fact.

## FINDINGS OF FACT

1. Morrison and Dorothy H. Ray (Ray) executed a promissory note to the East Gadsden Bank (Bank) on August 4, 1979, in the amount of $18,668.63.

2. The note was secured by a real estate mortgage to the Bank conveying for the purpose of security certain real property situated in the Green Hills Subdivision in Calhoun County in or near Ohatchee, Alabama.

3. On the date of execution of the note and the mortgage, both Morrison and Ray were unmarried. Ray was an employee of Morrison. Later Ray married, becoming Dorothy Ray Long (Long).

4. Contemporaneously with the execution of the note and mortgage, Morrison conveyed his interest in the property to Long, but remained liable on the note and mortgage.

5. On or about December 31, 1980, the Bank was closed by the Superintendent of Banks for the State of Alabama. FDIC became receiver and purchased certain assets of the Bank, including the subject note.

6. The note was in default before FDIC took over the Bank.

7. The only address appearing on the face of the note adjacent to the signatures of Morrison and Long is "Rt. 2 Bx. 41A, Attalla, Al. 35954", unmistakably in the

James D. Pruett, William D. Hudson, Pruett, Hudson, Turnbach & Warren, Gadsden, Ala., for plaintiff.

handwriting of Long. No other address appears there.

8. Attalla is located in Etowah County, Alabama.

9. Long formerly resided at this Attalla address, but prior to or about the time the note was executed she moved into the outsized mobile home located on, affixed to and a part of the mortgaged property. The note clearly showed this address as "Rt. 1 Ohatchee".

10. Morrison has never lived in Attalla. Rather, he has long resided in Bynum, Calhoun County, Alabama, since 1953, where he is well known. He is in business there as an agent for Ryder Truck Lines and also owns a supermarket which he leases. He receives both his personal and business mail at P.O. Box 385, Bynum, Alabama 36253, and at all time pertinent would easily have received all mail at Bynum, a small community, even with the box number omitted.

11. Bynum is much closer to the site of the mortgaged property than is Attalla.

12. Subsequent to its takeover, FDIC sent a certified letter to Morrison on September 23, 1981, addressed to him at "Rt. 2, Box 41A, Attalla, Alabama 35954", purporting to make final demand on the past due note. Since Morrison has never resided in Attalla and has never received mail at that address and did not give the Bank that address, the notice was understandably "returned to sender" undelivered.

13. On November 5, 1981, FDIC sent a letter to the Postmaster at Attalla requesting Morrison's address, but this letter was likewise returned, showing "no record". FDIC never wrote to either of the mortgagors at "Rt. 1, Ohatchee", the property address shown on the face of the note. Neither did FDIC request of the Ohatchee Postmaster Morrison's address.

14. FDIC made no reasonably diligent efforts to ascertain Morrison's correct address. Common sense and a cursory inspection of the note itself would have indicated that the Attalla address appearing thereon was not that of Morrison. FDIC not only failed to investigate the matter in Ohatchee or in Calhoun County where the property is located, but it also failed to visit the land to determine if either of the obligors lived there or if any occupant would know the whereabouts of Morrison. A simple inquiry in the area of Ohatchee would undoubtedly have led to the discovery of Morrison's proper mailing address.

15. On February 23, 1982, FDIC sent a foreclosure notice to Morrison and Long at the Attalla address, which the FDIC already knew was incorrect. Morrison did not receive it. FDIC should have known that this letter would not reach Morrison, inasmuch as the letter of September 23, 1981, to Morrison, and the letter of November 5, 1981, to the Attalla Postmaster, were both returned.

16. The mortgage instrument contained the traditional Alabama power of sale language, providing that upon default the mortgagee could sell the mortgaged property at public outcry after giving notice by publication once a week for three consecutive weeks in a newspaper published in the county where the property is located.

17. On March 12, 19 and 26, 1982, FDIC published a notice in the Anniston Star (Calhoun County) of a foreclosure sale to take place on April 2, 1982.

18. The purported foreclosure sale was, in fact, conducted on April 2, 1982, and FDIC's bid of $15,640 (85% of the appraised value of the property minus taxes, per FDIC policy) was the only and the successful bid. It gave itself a foreclosure deed.

19. After giving credit for the amount realized at foreclosure, the principal balance is $5,513.76. The total current balance, including 12.5% per annum interest, is $6,461.67. It is this sum for which FDIC sues.

20. Morrison never received actual notice of the impending foreclosure sale. He first learned of the sale from his attorney, Dan Morris, when Morris routinely wrote FDIC regarding the status of Long's loan, and was informed by FDIC that the property had been sold.

21. Subsequent to the sale, FDIC leased the property to Mr. and Mrs. James Andrews with an option to purchase at the end of the one year Alabama statutory period for redemption. The Andrews have exercised this option, and FDIC has conveyed the foreclosed property to them by quitclaim deed. There was no evidence of the price paid by the Andrews. For aught appearing they paid an amount sufficient to make FDIC whole.

22. Morrison could have bid the full amount of the debt at the foreclosure sale. He testified that he would, in fact, have entered such a bid, but speculation on this point is unnecessary to this decision.

23. A consent judgment against Long in the amount of $7,232.37 was entered by this Court on July 6, 1983. Therefore the Court does not concern itself with the adequacy of the notice to Long.

## CONCLUSIONS OF LAW

The parties have correctly conceded in the pre-trial order that this Court has jurisdiction over the subject matter and of the parties, and the Court so finds. Morrison's only defense is that he did not receive proper notice of the impending sale in order to be able himself to bid or to generate bidders so as to protect himself from a claim for a deficiency. As part of this defense he challenges the constitutionality of notice by publication pursuant to the power of sale contained in the mortgage and as presently permitted by the law of Alabama. He primarily relies on the recent case of *Mennonite Board of Missions v. Adams,* 462 U.S. ——, 103 S.Ct. 2706, 75 L.Ed.2d 180 (1983).

There are two issues presented:

1. Does constructive notice or notice by publication of a mortgage foreclosure sale meet the requirement of "due process" where the mortgage instrument itself and/or the state law contemplate such notice?

2. If not, did FDIC's efforts in this case to give actual notice fulfill the requirements of "due process"?

This Court is most reluctant to express an opinion which may cloud titles of a great many parcels of real property in Alabama and elsewhere in cases where there was no actual notice of an impending foreclosure sale given to parties whose property rights and/or deficiency judgment exposure are affected. This Court has tried to read *Mennonite* narrowly so as to limit the expansion of the concept of "due process" it outlines. The Court has been unable to avoid the clear import of *Mennonite.* It is the opinion of this Court that *Mennonite* is controlling in this case.

In *Mennonite,* Elkhart County, Indiana, instituted proceedings to sell mortgagor's property for non-payment of taxes by the mortgagor. In conducting a tax sale, pre-1980 Indiana law required notice by certified mail to the "owner" (*mortgagor*) of the property, as it did in regular foreclosure sales, but did not provide for such notice by mail or personal service to a *mortgagee* of the property. *Mennonite, supra,* 103 S.Ct. at 2708. Accordingly, only the mortgagor in *Mennonite* was notified by certified mail. *Id.* at 2709. The county posted and published an announcement of the proposed tax sale. *Id.* The mortgagee (Mennonite Board of Missions) was totally unaware of the pending sale, and neither it nor the mortgagor appeared at the sale. *Id.* The property was sold, and the two year statutory redemption period ran before the mortgagee finally learned that the property in which it had an interest had been disposed of. *Id.* The purchaser at the sale brought suit to quiet title. The mortgagee defended with the contention that it had not received constitutionally adequate notice and had not received "due process".

The Supreme Court cites *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, at 314, 70 S.Ct. 652 at 657, 94 L.Ed. 865 (1950), and reemphasizes the point that prior to an action which affects an interest in life, liberty or property protected by the Due Process Clause of the Fourteenth Amendment, a state must provide "notice reasonably calculated, under all circumstances, to apprise interested parties

of the pendency of the action and afford them an opportunity to present their objections". *Mennonite, supra,* 103 S.Ct. at 2709. Deciding in favor of the mortgagee, the *Mennonite* Court holds that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale", and "[s]ince a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale". *Id.* at 2711. If a *mortgagee* is entitled to actual notice of a tax sale, *a fortiori* a *mortgagor,* for whom there exists more than just a "substantial property interest", is entitled to actual notice. A mortgagor, such as Morrison, warrants to the mortgagee that he is an *owner* of the property, whereas a mortgagee is a mere lienor. Since the Bank here prepared the mortgage instrument and Morrison signed as mortgagor, FDIC is certainly estopped to deny that Morrison has no "legally protected property interest". Just as the tax sale in *Mennonite* could "result in the complete nullification of the mortgagee's interest", *Id.,* so too would this foreclosure sale, if valid, not only result in wiping out Morrison's interest but could materially affect the amount of any claim for deficiency. The fact that the amount of Morrison's indebtedness would be directly affected by the foreclosure leads, in light of *Mennonite,* inexorably to the conclusion that he was entitled to the same kind of notice of the upcoming foreclosure sale that he was entitled to receive when the instant suit for a deficiency was filed.

In yesteryear, a promissory note itself provided for acceptance of service by the maker in the event of default and, in effect, contained a confession of judgment. Those halcyon days of the creditor are gone forever. The evolving Due Process Clause has put an end to such practice, and the logic of *Mennonite* now knocks out constructive notice of a foreclosure sale even where the practice has previously been long recognized by state statute and is contained in the mortgage contract itself.

In *Mennonite,* the Court plainly states that "unless the mortgagee [that is, one with a legally protected property interest, which necessarily includes a mortgagor] is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane*". *Id.* The present Alabama statute which set forth the type of notice to be given a mortgagor with respect to the sale of this property under a power of sale provides:

Notice of said sale shall be given in the manner provided in such mortgage or deed of trust or in this Code in the county where the mortgagor resides and the land, or a part thereof, is located; but, if said mortgagor does not reside in the county where the land or any part thereof is located, then such notice must be published in the county where said land, or any material part thereof, is located; provided, that notice of all sales under powers of sale contained in mortgages and deeds of trust executed after July 1, 1936, where the amount secured is $500.00 or more, shall be given by publication once a week for three successive weeks in some newspaper published in the county in which such land or any portion thereof is situated, and said notice of sale must give the time, place and terms of said sale, together with a description of the property to be sold.

Ala.Code § 35–10–8 (1975).

■ Under the guidance of *Mennonite,* this Court must conclude and declare that the notice given Morrison, as authorized by § 35–10–8, and as provided in the mortgage instrument, is not constitutionally sufficient under the Fourteenth Amendment. Under *Mennonite* the notice published by FDIC in the Anniston Star simply was not notice "such as one desirous of actually informing the [mortgagor] might reasonably adopt to accomplish it". *Mullane, supra,* 339 U.S. at 315, 70 S.Ct. at 657, and *Mennonite, supra,* 103 S.Ct. at 2711.

It is interesting to note that the commentator in *Mortgages—Does Foreclosure Under Power of Sale Violate Due Process Rights?,* 4 Cum.—Sam.L.Rev. 507 (1974) correctly anticipated *Mennonite* and analyzed the decisions which pointed the way.

Although in *Northrip v. Federal National Mortgage Association,* 372 F.Supp. 594 (E.D.Mich.1974), nine years before *Mennonite,* a United States District Court recognized that where a state statute like § 35–10–8 encourages foreclosure by advertisement instead of by actual notice there is sufficient state action to trigger a Fourteenth Amendment inquiry and to find the procedure unlawful. *Northrip,* however, did not predict the scope and breadth of the rationale in *Mennonite.* A better prediction is found in 3 R. Powell, *The Law of Real Property,* § 466[1] at 696.76(8) (1981).

The next and only other question is whether or not FDIC's efforts at mail notice pass muster under *Mennonite.* The mortgage in *Mennonite* identified the mortgagee only as "MENNONITE BOARD OF MISSIONS a corporation, of Wayne County, in the State of Ohio". *Mennonite, supra,* 103 S.Ct. at 2711, n. 4. The Court said "that the mortgagee's address could have been ascertained by reasonably diligent efforts". *Id.* It is this Court's opinion that the FDIC should have known that the address appearing on the note signed by Morrison and Long, in the latter's handwriting, was not the address of Morrison. Morrison and Long not only had different names, but the evidence at trial never suggested that the two might in any way be expected to receive mail together at the address shown on the note beside Long's signature. The Court finds that FDIC did not make reasonably diligent efforts to ascertain Morrison's address, which could have been easily determined by appropriate inquiry. If it had ascertained that Morrison resided in Calhoun County and not in Etowah County, FDIC may have satisfied "due process" simply by addressing its foreclosure notice to "Grady P. Morrison, Calhoun County, Alabama", given the fact that Morrison was very well known in Calhoun County and further "recognizing the well-known skill of postal officials and employees in making proper delivery of letters defectively addressed". *Id.* None of these suggested measures would have involved any expenditure of "extraordinary efforts" on behalf of

FDIC to discover the "whereabouts" of Morrison. *Id.*

Even if Long had received all of FDIC's letters addressed to her at the Attalla address (which she did not), Morrison cannot be charged with actual or vicarious notice. Co-signers of a note and mortgage are not a unity. They are separate individuals with separate rights. By analogy to *Mennonite,* any actual notice to Long (who failed to take steps necessary to protect her property interest), cannot be construed as actual notice to Morrison. Id. at 2711.

Lastly, the fact that FDIC conveyed the property which it acquired at the foreclosure sale to the Andrews by quit-claim deed strongly suggests to this Court that FDIC itself has serious doubts as to the validity of its title in light of *Mennonite.*

## CONCLUSION

Based on the above findings of fact and upon the necessary teaching of *Mennonite Board of Missions v. Adams, supra,* the Court concludes that FDIC's notice of foreclosure to Morrison, as suggested by Ala. Code § 35–10–8 (1975) and as recited in the mortgage instrument, violates the "due process" requirements of the Fourteenth Amendment, and that the foreclosure sale was invalid. Thus, FDIC is estopped to claim a deficiency against Morrison. By separate order the Court will dismiss FDIC's complaint without prejudice to its being refiled at such time as proper foreclosure notice is given to Morrison in accordance with this opinion, or at such time as the FDIC tenders to Morrison good and marketable title to the real property described in the mortgage and Morrison declines to pay the entire balance due.

## ADDENDUM TO MEMORANDUM OPINION

A quick deluge of *amici curiae* comment from Alabama's mortgagees in reaction to this Court's Opinion of August 26, 1983, has caused this Court, of its own motion, to reconsider the rationale for the Order which accompanied that Opinion. This reconsideration does not call for a change in the

Order. It does call for an addendum to the Opinion.

■ It has been properly pointed out that the broad holding of the Court as contained in the Opinion of August 26, 1983, namely, that it is a violation of "due process" for anyone to conduct a foreclosure sale pursuant to a power of sale solely upon newspaper advertisement, as opposed to the foreclosure sale taking place only after a bona fide effort to provide actual notice to those parties whose interests will be affected, is unnecessary to a decision on the facts of this particular case. The reason is, of course, that FDIC is a federal agency whose actions vis-a-vis Grady Morrison are governed by the Due Process Clause of the Fifth Amendment, whereas non-governmental, private mortgagees who foreclose after notice by publication pursuant to the provisions in their mortgage contracts arguably are not acting "under color of state law". and therefore are not limited by the Due Process Clause of the Fourteenth Amendment. On August 26, 1983, the Court unnecessarily spoke to and purported to decide the broader constitutional question. The Court now deems it appropriate to amend and to limit its Opinion by pointing out simply that FDIC and federal agencies whose actions are limited by the Fifth Amendment must, in order to effect a valid foreclosure, do more than to rely upon newspaper notice to those whose property rights are affected.

It is apparent that FDIC already recognizes this "due process" limitation upon its foreclosure proceedings. Otherwise, FDIC would not have made even the feeble effort it made to give actual notice to Morrison in this case. It simply failed to act reasonably to notify Morrison and thus did not successfully foreclose.

The Court acknowledges that what it said in its Opinion of August 26, 1983, beyond this narrow holding was and is unnecessary to the decision and now becomes *dicta*. The broader issue shall await another day, another case, and perhaps another court.